# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01684-SCT

*BAY POINT PROPERTIES, INC. f/k/a BP*
*PROPERTIES, INC.*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*
*AND MISSISSIPPI DEPARTMENT OF*
*TRANSPORTATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/03/2014 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM ALEX BRADY, II |
| | CHARLES STERLING LAMBERT, JR. |
| ATTORNEYS FOR APPELLEES: | CHRISTOPHER M. HOWDESHELL |
| | JACK HOMER PITTMAN |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART, AND REMANDED - 07/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Bay Point Properties Inc. filed inverse condemnation proceedings against the Mississippi Transportation Commission,[1] claiming the easement MTC had across Bay Point's property had terminated and that MTC was required to pay Bay Point the unencumbered value of the property. The issue was put to the jury, which determined the easement—for

---

[1]For purposes of this opinion, we refer collectively to the Transportation Commission and the Department of Transportation as MTC.

which the Commission had paid $50,000—continued to encumber the property, but that the use by MTC was not a highway purpose. The jury awarded Bay Point the encumbered value of $500, as testified to by two witnesses.[2] Bay Point appealed. We affirm in part the judgment of the Circuit Court for the First Judicial District of Harrison County. However, the trial court failed to follow Section 43-37-9's mandate to "determine and award or allow . . . such sum as will, in the opinion of the court[,] . . . reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding." Thus, we reverse the judgment of the Harrison County Circuit Court in part and remand the case with instructions to the trial court to hold a hearing in compliance with Section 43-37-9.

### FACTS AND PROCEDURAL HISTORY

¶2. In 1952, the Mississippi State Highway Commission, MTC's predecessor, acquired an easement over certain property of Wallace Walker for "all highway purposes" by an agreed judgment.[3] The property was used to reconstruct a bridge spanning the Bay of St. Louis, between Pass Christian and Bay St. Louis, after the bridge had burned in 1948.[4] After Hurricane Katrina destroyed the bridge in 2005, MTC constructed a newly designed bridge

---

[2]Bay Point's expert refused to give an encumbered value. As a result, the only encumbered-value testimony before the jury was between $100 and $500.

[3]Pursuant to an agreed judgment, the Commission paid Walker $50,000 and Walker reserved a five-foot buffer along Bayou Boisdore to prohibit the general public from using bayou frontage.

[4]The bridge suffered substantial damage following Hurricane Camille in 1969, but MTC was able to repair the bridge in place.

across the bay.[5] MTC subsequently entered an agreement with Harrison County, which provided that (1) MTC would build a park, (2) Harrison County would maintain the park, (3) Harrison County would provide MTC any additional property required to build the park, and (4) MTC would maintain its property interest (its easement) in the park. MTC then built a park, with a parking lot, on the old road bed, with stairs connecting to the new bridge, which included a walking and biking path for the public.

¶3. Bay Point, Walker's successor in interest, filed inverse condemnation proceedings, claiming the easement terminated on the *whole* property when the new bridge was constructed following Katrina. Alternatively, Bay Point argued that the easement terminated on that *portion* of the easement used to build the park when the park was constructed. Bay Point asserted MTC's subsequent use constituted a taking for which it was entitled to just compensation of the unencumbered value of the property. MTC argued that it was using the property for highway purposes. Alternatively, MTC argued that, even if its use was not a highway purpose, the easement continued to burden the property because it had not been released on MTC's minutes as required by Section 65-1-123. *See* Miss. Code Ann. § 65-1-123 (Rev. 2012). Therefore, any compensation owed to Bay Point would be the value of the property, encumbered by the easement.

¶4. The jury viewed the property and heard five days of testimony before returning a verdict for Bay Point. The circuit court denied Bay Point's motion for attorneys' fees, costs,

---

[5]The new design required that the eastern foot of the new bridge be moved south and west to flatten out or straighten the curve approaching the now-elevated bridge.

and expenses, as well as its post-trial motions for additur, new trial on the issue of damages, and/or judgment notwithstanding the verdict (JNOV). Bay Point appealed.

## ISSUES

¶5.    Bay Point raises the following issues, which we restate and reorder for clarity:

I.      Whether the trial court erred in granting MTC's motion in limine regarding release of the easement.

II.     Whether the trial court erred in denying Bay Point's supplemental motion in limine regarding testimony of a nominal sum.

III.    Whether the trial court erred in excluding testimony of an appraisal of the five-foot buffer.

IV.     Whether the trial court erred in giving jury instructions D-2A, D-3A, and D-7A.

V.      Whether the trial court erred in refusing jury instruction P-4.

VI.     Whether the trial court erred in not instructing the jury that MTC must acquire property in fee to use as rest and recreation areas under Section 65-1-51.

VII.    Whether the jury verdict was supported by substantial evidence.

VIII.   Whether the trial court erred in denying Bay Point's motion for attorneys' fees and costs.

IX.     Whether the trial court erred in denying Bay Point's post-trial motions.

## ANALYSIS

**I.      Whether the trial court erred in granting MTC's motion in limine regarding release of the easement.**

¶6.    Bay Point argues the trial court erred in granting MTC's motion in limine, limiting evidence of abandonment of the easement to the minutes of the Commission. We review

4

evidentiary matters for an abuse of discretion. ***Ware v. Entergy Miss., Inc.***, 887 So. 2d 763, 766 (Miss. 2004). There is no abuse of discretion in granting a motion in limine "if the court determines that (1) the material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." ***Id.***

¶7.     The Legislature has provided by statute the  process by which an easement for highway purposes terminates: "All easements for highway purposes shall be released when they are determined on the minutes of the commission as no longer needed for such purposes[.]" Miss. Code Ann. § 65-1-123(5). The section further provides that "[i]n no instance shall any part of any property acquired by the commission, or any interest acquired in such property, including, but not limited to, easements, be construed as abandoned by nonuse[.]" Miss. Code Ann. § 65-1-123(6). Per the statute, the easement could not have been abandoned *by nonuse*. Release (*i.e.*, termination or abandonment) requires a determination on the minutes.

¶8.     Therefore, any evidence of abandonment other than minute entries is irrelevant and inadmissible. *See* M.R.E. 401 ("'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); M.R.E. 402 ("Evidence which is not relevant is not admissible."). As the statute itself provides the sole process by which an easement for highway purposes terminates, the trial court did not err in limiting evidence of abandonment to what the statute requires—Commission minute entries.

¶9.     The dissent's separation-of-powers argument is misplaced. *See* Dis. Op. at ¶¶ 42-43. The Legislature has decreed that it is the Transportation Department's prerogative whether to release a highway easement. MTC is the entity charged with transportation-related policy decisions, not this Court.[6]

### II.     Whether the trial court erred in denying Bay Point's supplemental motion in limine regarding testimony of a nominal sum.

¶10.     Bay Point argues on appeal that it filed a supplemental motion in limine to strike any testimony that its property was worth a nominal sum. However, Bay Point mischaracterizes its own motion. Bay Point's supplemental motion in limine requested only that the trial court "bar the expert testimony of John 'Jeb' Stewart[.]"  The motion asserted that "Mr. Stewart should not be allowed to offer his opinion . . . . Mr. Stewart should not be allowed to offer any testimony . . . . Mr. Stewart should not be allowed to sit in front of the jury . . . ." Finally, Bay Point requested the court "bar the expert testimony of John 'Jeb' Stewart."

¶11.     While the trial court denied the motion, Stewart did not testify. We fail to see how Bay Point was prejudiced by the trial court's refusal to bar Stewart from testifying when Stewart

---

[6]The dissent contends this Court's "interpretation of the law permits the MTC unilaterally to determine when an easement has terminated." Dis. Op. at ¶ 43. To be clear, whether the easement had been abandoned was a determination to be made by the appropriate factfinder—in this case, the jury. *See* Jury Instruction D-7A, ¶ 16, *infra*. As in all cases, a jury's decision is subject to judicial review.

in fact did not testify.[7] *See* M.R.E. 103(a) (Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]").

### III. Whether the trial court erred in excluding testimony of an appraisal of the five-foot buffer.

¶12. At some point, MTC appraised the value of the five-foot buffer around Bayou Boisdore reserved to Walker in the agreed judgment. Bay Point argues the trial court erred in excluding evidence of that appraisal. In *Coleman v. Mississippi Transportation Commission*, 159 So. 3d 546, 548 (Miss. 2015), this Court held a trial court in error for excluding a second appraisal of the same property. As the appraisal was of the same property, it was "relevant and admissible" as to the value of that property. *Id.* at 551-52. However, the appraisals here are of two different parcels of property. The five-foot buffer was reserved to Walker, and thus he retained rights in that property that he did not retain in the property subject to MTC's easement. The trial court found the evidence would be irrelevant and would serve only to confuse the jury, as the value of the buffer was not related to the value

---

[7]Bay Point argues in its supplemental motion in limine that Brian Moore and Tommy Madison should not have been allowed to testify regarding a nominal value for the same reasons it asserted Stewart should not have been allowed to testify to a nominal value. However, the motion sought only to exclude Stewart's testimony. At trial, Bay Point failed to object that Moore's or Madison's opinions were improper expert testimony. If no contemporaneous objection is made, an error is waived. *InTowne Lessee Assocs., LLC v. Howard*, 67 So. 3d 711, 719 (Miss. 2011). *See also* M.R.E. 103(a)(1). Nevertheless, Madison testified that, according to "the appraisal methodology and treatises," an underlying fee encumbered by an easement for all highway purposes has a nominal value of around $100-$500. Moore testified that "the appraisal industry" places a nominal value of around $500 on property encumbered by an easement for all highway purposes. Opinions supported by methodologies recognized in the appraisal industry are admissible. *See Miss. Gulf Props., LLC v. Eagle Mech., Inc.*, 98 So. 3d 1097, 1103-04 (Miss. Ct. App. 2012) (*citing Gulf S. Pipeline Co. v. Pitre*, 35 So. 3d 494 (Miss. 2010)).

of the property, whether encumbered or not. Moreover, neither the park nor the highway sits on the buffer. The trial court did not abuse its discretion in excluding this evidence.

### IV. Whether the trial court erred in giving jury instructions D-2A, D-3A, and D-7A.

¶13. "The main query we make when reviewing jury instructions is whether (1) the jury instruction contains a correct statement of the law and (2) whether the instruction is warranted by the evidence." *N. Biloxi Dev. Co., LLC v. Miss. Transp. Comm'n*, 912 So. 2d 1118, 1123 (Miss. 2005). In reviewing jury instructions, the instructions must be read as a whole. *Id.*

¶14. Instruction D-2A instructed the jury "that an easement encumbers, or is still over and upon the land unless it has been abandoned by [MTC]." Instruction D-3A instructed the jury that, in order to prevail on the issue of abandonment, Bay Point had to prove by full and clear evidence that MTC had abandoned the easement. The instruction then quoted Section 65-1-123, which provides that abandonment of an easement requires a release on the minutes of the Commission, rather than mere nonuse.

¶15. Bay Point argues the full and clear evidence standard was erroneous. However, "[e]vidence of abandonment must be 'full and clear.'" *Stone v. Lee Brant Family Invs.*, 998 So. 2d 448, 456 (Miss. Ct. App. 2008) (quoting *Columbus & Greenville Ry. Co. v. Dunn*, 184 Miss. 706, 185 So. 583, 586 (1939)). Bay Point further argues the easement could have terminated in ways other than a minute entry of release by MTC, but D-3A quoted the statute directly. As discussed in Issue I *supra*, this issue is without merit.

¶16. Finally, D-7A presented the jury with three alternative findings:

8

If you find (1) that [MTC]'s easement has not been abandoned, and (2) that the use being made of the property in this case is a highway purpose, then your verdict shall be in favor of [MTC], and no sum of money shall be awarded to [Bay Point]. Or,

Alternatively, if you find (1) that [MTC]'s easement has not been abandoned, but (2) that the use being made of the property in this case is not a highway purpose, then your verdict shall be in favor of [Bay Point], and you may award it a sum of money, but said sum may not exceed a nominal sum that has been evidenced by the proof in the case. Or,

Alternatively, if, and only if, you find by full and clear evidence that [MTC]'s easement has been abandoned, and that the property of [Bay Point] has been taken by [MTC], you may award [Bay Point] just compensation for any such taking, just compensation being what you determine to be the difference between the fair market value of the property taken after proper application of the before and after rule.

¶17. The jury essentially had to resolve two issues: whether the easement was abandoned, and whether the use being made was a highway purpose. If the easement remained in existence and MTC was using it for a highway purpose, there was no taking. If the easement remained in existence, but MTC was using the property for a purpose other than a highway purpose, then MTC took Bay Point's property. However, the compensation owed would be the value of the property, subject to the easement, and could not exceed a sum evidenced by the proof offered. The only encumbered value placed before the jury was a nominal one (between $100 and $500).[8] Alternatively, if the easement had been abandoned, and MTC was using the property for a purpose other than a highway purpose, then MTC took Bay Point's property, for which Bay Point was owed the value of the property, unencumbered by the

[8]Had greater values been testified to, the argument that a "nominal sum" was incorrect would have more validity. However, the only encumbered value evidenced by proof *in this case* was a nominal one. Therefore, the instruction correctly instructed the jury as to how the law applied to the facts in this case.

easement. This instruction contains a correct statement of the law that was warranted by the evidence, given the testimony offered of the necessity to repair and/or replace the Highway 90 bridge that spans the Bay of St. Louis. *See* ¶ 2 *supra*.

¶18.   The dissent raises arguments not presented to the trial court. (*See* Dis. Op. at ¶¶ 41-42). However, we do not consider arguments raised for the first time on appeal. *See Anderson v. LaVere*, 136 So. 3d 404, 410 (Miss. 2014). We do not hold trial courts in error on issues not presented to them for consideration. *See Ridgway Lane & Assocs. v. Watson*, 189 So. 3d 626, 630 n.4 (Miss. 2016) (quoting *InTown Lessee Assocs., LLC v. Howard*, 67 So. 3d 711, 718 (Miss. 2011)); *Ronk v. State*, 172 So. 3d 1112, 1139 (Miss. 2015) (citing *Moawad v. State*, 531 So. 2d 632, 634 (Miss. 1988)). Furthermore, Bay Point did not object to the instruction based on the arguments introduced anew by the author of the dissent. If a proper contemporaneous objection is not made, an error is waived. *See InTowne*, 67 So. 3d at 719.

**V.     Whether the trial court erred in refusing jury instruction P-4.**

¶19.   P-4 is a long and convoluted instruction. Among other things, it gives the jury a summary of Bay Point's position along with a summary of MTC's position. It then presents the jury with the following:

> If you find that:
>
> 1.     The underlying property burdened by the easement granted by Wallace C. Walker in 1952 is owned in fee by [Bay Point]; and
>
> 2.     That [MTC] only possessed an easement for the limited purpose granted in the 1952 Judgment and Verdict; and

10

3.     [MTC]'s current uses of the Property of Bay Point are outside the limited and specific scope of the Easement granted to [MTC], then you must find in favor of [Bay Point] and award just compensation. If you find that the current uses of [Bay Point]'s property are within the scope of the Easement granted in the 1952 Judgment and Verdict, then you must find in favor of [MTC].

¶20.     As discussed in Issue IV *supra* regarding instruction D-7A, the jury had to determine whether the easement still burdened the property and whether MTC's use was a highway purpose. Instruction P-4 is premised on Bay Point's position that the easement terminated when MTC used the property for a nonhighway purpose, which fails to consider Section 65-1-123's requirement that easements be declared as no longer necessary on Commission minutes before they are released. "An instruction that incorrectly states the law, is covered fairly in another instruction or is without foundation in the evidence need not be given." *N. Biloxi*, 912 So. 2d at 1123. We find the trial court did not err in refusing to give jury instruction P-4.

### VI.     Whether the trial court erred in not instructing the jury that MTC must acquire property in fee to use as rest and recreation areas under Section 65-1-51.

¶21.     Section 65-1-51 reads, in pertinent part, "[t]he commission may acquire and have the Transportation Department develop publicly owned and controlled rest and recreation areas and sanitary and other facilities within or adjacent to the highway right-of-way reasonably necessary to accommodate the traveling public." Miss. Code Ann. § 65-1-51 (Rev. 2012). Bay Point argues this section requires MTC to buy property used for rest and recreation areas in fee, and that the trial court erred in not instructing the jury to that effect. MTC counters by arguing it can build rest and recreation areas on publicly owned easements for such purposes.

11

¶22. However, we decline to address whether MTC can build rest and recreation areas on easements.

> To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it.

*Catholic Diocese of Natchez-Jackson v. Jaquith*, 224 So. 2d 216, 221 (Miss. 1969). *See also Gray v. State*, 799 So. 2d 53, 61 (Miss. 2001).

¶23. Even if MTC was required to acquire the property used for the park in fee, the value of the property depended on the existence, *vel non*, of the easement. If the easement continued to exist, compensation due to Bay Point would be the value of the property, subject to the easement. If the easement no longer existed, compensation due to Bay Point would be the value of the property, unencumbered by the easement. The jury was presented with only two values: an encumbered value of between $100 and $500, and an unencumbered value of $26 per square foot. The jury determined the easement continued to exist and awarded Bay Point $500. That being the case, instructing the jury that MTC was required to acquire land used for rest and recreation areas in fee would not have affected the final result of the case, and therefore did not prejudice Bay Point. *See Jaquith*, 224 So. 2d at 221. Assuming the trial court erred by not instructing the jury that MTC must acquire land used for rest and recreation areas in fee, that error was harmless.

**VII. Whether the jury verdict was supported by substantial evidence.**

12

¶24.    "This Court has a long-standing history of not disturbing jury verdicts in eminent domain proceedings, especially when the jury has viewed the property being taken and the evidence in the record supports the jury's findings." *Trowbridge Partners, L.P. v. Miss. Transp. Comm'n*, 954 So. 2d 935, 943 (Miss. 2007) (citing *Miss. Highway Comm'n v. Havard*, 508 So. 2d 1099, 1105 (Miss. 1987)). Courts are "loathe to disturb a jury's eminent domain award where, as here, the jury has personally viewed the premises." *Crocker v. Miss. State Highway Comm'n*, 534 So. 2d 549, 554 (Miss. 1988). In fact, "where the jury has viewed the property being taken, any substantial evidence in the record supporting the jury's damage assessment will preclude reversal." *Id.*

¶25.    The jury's verdict of $500 was supported by substantial evidence. The jury viewed the property. The appraiser-witnesses agreed that the unencumbered value of the property was $26 per square foot. Bay Point's appraiser refused to give an encumbered value. MTC's appraisers testified that, according to appraisal methodology and procedures, along with their personal knowledge of practice, the encumbered value of the property would be a nominal sum of around $100-$500.[9] This was the only encumbered value presented to the jury.

¶26.    Bay Point consistently argues that the easement terminated on the whole property when MTC built the new bridge, or that it at least terminated on the property used for the park when the park was built. As discussed in Issue I, *supra*, easements for highway purposes can be released only when MTC determines on its minutes that it no longer needs the

---

[9]Though the easement for all highway purposes rendered the land practically worthless, this value was based on the maxim that because land holds the world together, it cannot be devoid of value.

property for highway purposes.[10] While MTC's agreement with Harrison County was executed on the minutes, the agreement provided that the county would provide, "at no cost to the Commission, any right or interest in any property owned by the [c]ounty which may be necessary to complete construction of the [p]ark." The agreement further provided that MTC retained its interest in the property, and that if the county determined it would no longer operate the park, the county would inform MTC, "which will have the option of closing the [p]ark and removing all improvements." The jury heard this evidence but determined it insufficient to constitute a release.

### VIII. Whether the trial court erred in denying Bay Point's motion for attorneys' fees and costs.

¶27. "[A] trial court's decision regarding attorneys' fees will not be disturbed by an appellate court unless it is manifestly wrong." *Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So. 2d 495, 521 (Miss. 2007) (citing *Mabus v. Mabus*, 910 So. 2d 486, 488 (Miss. 2005)).

¶28. Pursuant to Mississippi Code Section 43-37-9,

---

[10]Bay Point relies on *Hattiesburg Realty* for its contention that highway easements can terminate other than by a declaration on commission minutes. This reliance is misplaced. *Hattiesburg Realty* provides "If and when the Commission decides to abandon its right-of-way easement over all or any portion of the Tuttle lots, or declares all or any portion of the Tuttle lots surplus under applicable law, the disposition . . . would be governed and controlled by applicable Mississippi law." *Hattiesburg Realty Co. v. Miss. State Highway Comm'n*, 406 So. 2d 329, 332 (Miss. 1981). *See also Miss. State Highway Comm'n v. McClure*, 536 So. 2d 895, 896 (Miss. 1988) ("When the MSHC determined that a portion of that easement was no longer needed by the public, the easement ceased to exist."). These cases are consistent with the statutory provision, as the Commission makes decisions or declarations only through its minutes.

[w]here an inverse condemnation proceeding is instituted by the owner of any right, title or interest in real property because of use of his property in any program or project in which federal and/or federal-aid funds are used, the court, rendering a judgment for the plaintiff in such proceeding and awarding compensation for the taking of property, or the state's attorney effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will, in the opinion of the court or the state's attorney, reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding.

¶29. MTC used federal funds to finance construction of the park. Bay Point was the plaintiff in this inverse-condemnation proceeding. The jury rendered a verdict for the plaintiff in the amount of $500. Based on the jury verdict, the trial court rendered a judgment for the plaintiff in the amount of $500. Accordingly, all the requirements of the statute were met for an award of "reasonable costs, disbursements and expenses, including reasonable attorney,[11] appraisal and engineering fees, actually incurred because of such proceeding." Section 43-37-9's mandatory language—*shall* determine and award—leaves no room for

---

[11]Rule 1.5 of the Mississippi Rules of Professional Conduct sets out several factors which the trial court should consider in determining the reasonableness of the amount of attorneys' fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Miss. R. Prof'l Conduct 1.5(a).

judicial discretion, except as to a reimbursement amount that was "reasonable." We conclude it was within the trial court's discretion not to grant Bay Point's request for $680,000 in full. Yet we reject the trial court's failure to award *any* reimbursement at all. Such a result is in direct violation of the statute and therefore manifestly wrong.

### IX. Whether the trial court erred in denying Bay Point's post-trial motions.

¶30. Bay Point's entire argument is that "the jury award of $500 was in error and the lower [c]ourt's refusal to grant Plaintiff's Motion for Additur was a clear error of law, an abuse of discretion, manifestly wrong and contrary to the substantial weight of the evidence, and reversal is proper."

¶31. An additur can be granted where (1) the damages are inadequate because the jury was influenced by bias, prejudice, or passion; or (2) the damages awarded were contrary to the overwhelming weight of the evidence. Miss. Code Ann. § 11-1-55 (Rev. 2014). The evidence must be viewed in the light most favorable to the party in whose favor the jury decided. *Lewis v. Hiatt*, 683 So. 2d 937, 941 (Miss. 1996). As discussed in Issue VII *supra*, the jury award of $500 was supported by substantial evidence. Ergo, the trial court's refusal to grant additur was not in error.

### CONCLUSION

¶32. For the reasons stated, the judgment of the Circuit Court for the First Judicial District of Harrison County is affirmed in part. Because the trial court rendered judgment in Bay Point's favor and awarded it compensation, all of the requirements of the statute were met for an award of reasonable costs, disbursements, and expenses, including reasonable

attorney, appraisal, and engineering fees actually incurred because of such proceeding. The trial court's failure to follow the statute's clear mandate is reversible error. We therefore affirm the judgment in part, reverse the judgment in part, and remand the case to the Harrison County Circuit Court with instructions to the trial court to hold a hearing in compliance with Section 43-37-9.

¶33.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶34.  The majority affirms the trial court's grant of a jury instruction that allowed the jury to find that a taking had occurred because the Mississippi Transportation Commission (MTC) no longer was using the easement for highway purposes, but that just compensation could not be awarded because the MTC had not released the easement on its minutes. Indeed, Mississippi Code Section 65-1-123(5) provides that "[a]ll easements for highway purposes shall be released when they are determined on the minutes of the commission as no longer needed for such purposes . . . ." Miss. Code Ann. § 65-1-123(5) (Rev. 2012). But a state statute cannot be applied in a manner that thwarts a landowner's state and federal constitutional rights to just compensation for a governmental taking of private property. U.S. Const. amend. V; U.S. Const. amend. XIV; Miss. Const. art. 3, §17; *Presault v. U.S.*, 100 F.3d 1525, 1551-52 (Fed. Cir. 1996). Therefore, I respectfully dissent. I would reverse and

remand for a determination of just compensation owed to Bay Point for the taking of its property unburdened by the easement.

¶35.    The facts of this case may be stated succinctly. In 1952, the MTC[12] acquired an easement over the property of Wallace Walker for highway purposes. Walker's successor, Bay Point Properties Inc., sued for inverse condemnation after the MTC commenced construction of a public park on the easement and asserted that the use of the land for a public park was within the scope of the easement. The jury found that, because the MTC's use of the land was not for highway purposes, and thus outside the scope of the easement, a taking had occurred. But because the MTC had not released the easement on its minutes by entering a determination that the easement was no longer needed for highway purposes, the jury did not award just compensation for the taking. Instead, the jury awarded nominal damages of $500, an amount representing the value of the Bay Point's property encumbered by the easement.

¶36.    On appeal, Bay Point renews its argument from the trial that, because the jury found that the MTC's use of the easement exceeded its scope, the easement was terminated, and the MTC owes just compensation for the property unencumbered by the easement. The MTC argues that the easement did not terminate because Section 65-1-123(6) states that the MTC's easements cannot be construed as abandoned by nonuse, and Section 65-1-123(5) states that easements for highway purposes "shall be released when they are determined on the minutes

---

[12] Then the Mississippi State Highway Commission.

18

of the commission as no longer needed for such purposes." Miss. Code Ann. §§ 65-1-123(5); 65-1-123(6) (Rev. 2012).

¶37. Under the Fifth Amendment to the United States Constitution, "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Article 3, Section 17, of the Mississippi Constitution provides,

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

Miss. Const. art 3, § 17. This Court has held that the state constitutional right "provides broader protection of private property rights by the guarantee that '[p]rivate property shall not be taken or damaged for public use, except on due compensation . . . .'" *Gilich v. Miss. State Highway Comm'n*, 574 So. 2d 8, 11 (Miss. 1990) (quoting Miss. Const. art. 3, § 17). These provisions establish absolute federal and state constitutional rights to just compensation when private property is taken for public use.

¶38. The MTC is authorized by statute to take by eminent domain any rights, title, and interests in property that are necessary for its authorized purposes. *Roberts v. State Highway Comm'n*, 309 So. 2d 156, 161 (Miss. 1975); Miss. Code Ann. § 65-1-47 (Rev. 2012). Here, the MTC took an easement for highway purposes. An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land . . . for a specific limited purpose." *Easement*, Black's Law Dictionary 527 (7th ed. 1999). The dominant tenement holds the easement, and the obligation is imposed upon the servient tenement.

19

*Browder v. Graham*, 204 Miss. 773, 38 So. 2d 188 (1948). Easements may be created by express grant, implication, or prescription. *Miss. State Highway Comm'n v. Wood*, 487 So. 2d 798, 804 (Miss. 1986). When an easement is created by express grant for a particular purpose, the terms of the grant govern the extent of the permissible usage. *Presault*, 100 F.3d at 1542 (quoting Jon. W. Bruce and James W. Ely, Jr., *The Law of Easements and Licenses in Land* ¶8.02[1], at 8-3 (Rev. ed. 1995)). If the holder of the dominant estate uses the land in a way inconsistent with the purpose for which the easement was granted, the easement reverts to the holder of the servient estate free of the easement. *Presault*, 100 F.3d at 1542 (quoting *Lawson v. State*, 730 P.2d 1308, 1312 (Wash. 1986)).

¶39.     Bay Point argued that the easement had reverted to Bay Point when the MTC used the easement to build a park, a use which Bay Point argued exceeded the grant of the easement for highway purposes. The jury agreed and found that the MTC no longer was using the easement for highway purposes; thus, a taking had occurred. However, the trial court instructed the jury that, unless it also found that the MTC had released the easement on its minutes, the MTC retained the easement and the jury could not award just compensation. The trial court granted this jury instruction after finding that Section 65-1-123(5) does not permit the termination of an easement for highway purposes in any manner other than by a release on the minutes.

¶40.     I would hold that the trial court erroneously applied Section 65-1-123(5) and Section 65-1-123(6) in a manner that violated Bay Point's state and federal constitutional rights to just compensation for the taking. I would hold that the jury's finding that the easement was

no longer used for highway purposes triggered Bay Point's constitutional rights to just compensation for the value of the property unencumbered by the easement. As stated, the MTC had title to an easement for highway purposes. As found by the jury, when the MTC built the park, it put the property to a new use, outside the grant of an easement for highway purposes. In other words, according to the jury's finding, the MTC's use of the easement exceeded the terms of the grant, causing the easement to revert to Bay Point and entitling Bay Point to just compensation for the MTC's taking of the easement for use as a park. The MTC presented no evidence or argument that the easement had not terminated due to some need for future highway use. This Court errs by speculating that the easement may be needed for future repair or replacement of the Highway 90 bridge.

¶41.    Moreover, the MTC acquired the easement in 1952, before the enactment of Section 65-1-123(5) and Section 65-1-123(6). These provisions were added to the statute by amendment in 1988. 1988 Miss. Laws, ch. 597, §1. Yet the trial court construed Sections 65-1-123(5) and Section 65-1-123(6) to require that Bay Point could show that the easement had terminated only if the MTC had released the easement on its minutes. This interpretation prevented any termination of the easement that otherwise would have occurred under the common law. It has been held that, because interests in land are fixed at the time of their creation, application of a "later statute[] . . . to divest those interests would constitute a separate ground for finding a governmental taking." *Presault*, 100 F. 3d at 1540 n.13 (citing *Lawson*, 730 P. 2d 1308). When the easement was created in 1952, termination of an easement did not require a determination on the MTC's minutes. Therefore, constitutionally,

21

Section 65-1-123(5) cannot be applied to divest the interests of Bay Point by supplanting the common law and requiring a determination on the minutes before an easement can terminate.

¶42.     Additionally, the trial court's interpretation of Section 65-1-123(5) implicated the doctrine of separation of powers. Although the majority points out that Bay Point never presented a separation of powers argument to the trial court, this Court may address a separation of powers violation *sua sponte*. ***Wimley v. Reid***, 991 So. 2d 135, 136 (Miss. 2008). Article 1, Section 1 of the Mississippi Constitution provides,

> The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

Miss. Const. art. 1, § 1. Article 1, Section 2, addresses encroachment of power and provides, in part, that,

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.

Miss. Const. art. 1, § 2.

¶43.     The jury instruction granted by the trial court and approved by the majority in this case plainly allowed the MTC, an executive agency, to exercise power properly belonging to the judiciary. The majority's interpretation of the law permits the MTC unilaterally to determine when an easement has terminated. As shown by this case, even if the facts support the legal conclusion that an easement has terminated by its own language, under the majority's interpretation, the MTC may hold the easement indefinitely by refusing to release it on the minutes no matter how far the MTC may stray from the public purpose for which the

22

property was taken from its private owner. And under the majority's interpretation, if a lawsuit ensues, the jury's role is limited to deciding whether the MTC has, in fact, released the easement on its minutes. This Court errs by construing Section 65-1-123 to allow the MTC to retain terminated easements until such time, if ever, as it deigns to release them on its minutes.

¶44. Finally, I would hold that Section 65-1-123(5) and Section 65-1-123(6) are no bar to Bay Point's recovery of just compensation equal to the value of its property unencumbered by the easement. Section 65-1-123(6) states that no property interest acquired by the MTC "shall . . . be construed as abandoned by nonuse." Under the common law, a presumption of abandonment arises from protracted nonuse of an easement over an extended period of time, and the presumption is strengthened if there is proof of intent to abandon. *R & S Dev., Inc. v. Wilson*, 534 So. 2d 1008, 1010 (Miss. 1988). Bay Point does not claim abandonment by nonuse, and the jury did not find the easement to have been abandoned. Indeed, the MTC's use of the easement to build a public park hardly can be considered abandonment. Instead, Bay Point argued and the jury found that a taking had occurred because the MTC was using the  easement, but not for highway purposes. Thus, Section 65-1-123(6) did not bar Bay Point's recovery of just compensation for the unencumbered value of the property.

¶45. Neither does Section 65-1-123(5) bar Bay Point's recovery of just compensation for the value of the property unencumbered by the easement. Section 65-1-123(5) states that the MTC "shall" release an easement for highway purposes when it is determined on the minutes to no longer be needed for such purposes. Thus, the statute places an affirmative duty upon

the MTC to determine if and when an easement is no longer needed for highway purposes, and then to release that easement on the minutes. Here, the MTC did not formally release the easement on its minutes. However, the jury has entered a verdict to the effect that the easement no longer is being used for highway purposes. "Equity regards as done that which ought to be done." *PMZ Oil Co. v. Lucroy*, 449 So. 2d 201, 208 (Miss. 1984). A jury finding that the easement no longer was being used for highway purposes eliminated the need for a formal entry of that fact on the minutes. Therefore, the jury should have been instructed to award just compensation for the unencumbered value in the event it determined the easement no longer was being used for highway purposes.

¶46.    The majority affirms a verdict that violated Bay Point's federal and state constitutional rights to just compensation for the taking of its property for public use. This Court errs by interpreting Sections 65-1-123(5) and (6) in a manner that violates Bay Point's right to just compensation. Because the jury found that the MTC's easement no longer was being used for highway purposes, Bay Point was entitled to just compensation for the value of the property unencumbered by the easement. I would reverse the judgment and remand this case to the trial court for a determination of just compensation for the unencumbered value of the property.

    **KING, J., JOINS THIS OPINION.**